IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERTO ELIAS MARTINEZ, ID # 19985-078, | § | |
| Movant, | § | Civil Action No. 3:22-CV-0737-D (Criminal No. 3:18-CR-066-D-5) |
| VS. | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

MEMORANDUM OPINION
AND ORDER

Movant Roberto Elias Martinez ("Martinez"), a federal prisoner, moves to vacate, set aside, or correct his sentence in Criminal No. 3:18-CR-066-D-5 under 28 U.S.C. § 2255. For the reasons that follow, the court denies the motion and dismisses this action with prejudice. The court also denies a certificate of appealability.

I

Martinez was charged in a ten-count indictment with two counts of conspiracy to possess with intent to distribute a controlled substance and one count of possession with intent to distribute a controlled substance. He was appointed counsel and pleaded guilty to the possession count under a plea agreement.

In his plea agreement, Martinez recognized that pleading guilty to the charged offense would subject him to imprisonment for a period not to exceed 20 years. He understood the court alone would impose his sentence after considering the advisory sentencing guidelines, that no one could predict with certainty the outcome of the court's consideration of the

guidelines, and that he would not be allowed to withdraw his plea if his sentence was higher than expected. He acknowledged that he had thoroughly reviewed all legal and factual aspects of the case with his counsel, was satisfied with his counsel's representation, had received satisfactory explanations concerning each paragraph of the plea agreement, each of his rights affected by the agreement, and the available alternatives to entering into the agreement, and concluded it was in his best interest to enter into the agreement and its terms instead of proceeding to trial. He also waived his right to appeal his conviction and sentence and his right to contest the conviction and sentence in any collateral proceeding, except in the limited circumstances set out in the plea agreement. He agreed that the plea agreement was a complete statement of the parties' agreement.

At his rearraignment, Martinez stated under oath that he understood that the court alone would decide his sentence, that the sentencing guidelines were advisory, that his counsel's professional opinion concerning what he thought the advisory guideline range might be was not a guarantee or promise, that neither the court nor Martinez's counsel would be able to determine the applicable advisory guideline range until after a written presentence investigation report ("PSR") was completed, and that no one, including Martinez's counsel, could predict in advance what his sentence would be. He further understood that if the court imposed a sentence more severe than he expected, he would still be bound by his guilty plea and would have no right to withdraw it. He affirmed that he understood his plea documents before he signed them, that he was not pleading guilty based on any promises by anyone other than those set forth in the plea documents, and that no one had threatened or attempted

in any way to force him to plead guilty. He pleaded guilty, and the court found that his plea was knowing and voluntary.

The United States Probation Office prepared a PSR and addenda for purposes of sentencing. Martinez was held accountable for 20,056.70 kilograms of marihuana equivalent based on his delivery of 2 ounces of heroin to an undercover officer on one occasion and 10 kilograms of methamphetamine from his involvement in relevant conduct. His base offense level was 34 based on the quantity of drugs for which he was held accountable. Two levels were added because the offense involved methamphetamine imported from Mexico, and three levels were added for Martinez's role as a manager or supervisor. Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 36. His total offense level of 36 and criminal history category of III yielded a guideline imprisonment range of 235 to 293 months. Because the statutory maximum sentence of imprisonment was 240 months, the guideline imprisonment range became 235 to 240 months.

Martinez objected to the PSR's inclusion of the 10 kilograms of methamphetamine to the quantity of drugs for which he was held accountable. The addenda addressed the objection and supported the inclusion of the methamphetamine in determining Martinez's base offense level. After hearing arguments at the sentencing hearing on Martinez's objection, the court overruled it. By judgment dated August 5, 2019, Martinez was sentenced to 240 months' imprisonment and three years of supervised release. The Fifth Circuit affirmed the judgment on direct appeal. On March 22, 2021 the Supreme Court denied Martinez's petition for a writ of certiorari.

Martinez's § 2255 motion is dated March 22, 2022 and was docketed on March 31, 2022. In it, he contends that (1) his Fifth Amendment rights were violated "by actions and omissions of Government in connection with plea (and affecting sentencing)"; (2) his trial counsel rendered ineffective assistance; and (3) his appellate counsel rendered ineffective assistance. D. Mot. (ECF No. 2) at 7. Respondent United States of America (the "government") filed a response on July 28, 2022.[1] Martinez filed a reply on November 2, 2022.

II

After conviction and exhaustion or waiver of the right to direct appeal, the court presumes that a defendant has been fairly and finally convicted. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc)). Post-conviction "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citation and internal quotation marks omitted); *see also United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) ("A defendant can challenge a final conviction, but only on issues of constitutional or jurisdictional magnitude.").

[1]The government contends that Martinez's § 2255 motion is time-barred, and Martinez attests in an affidavit with his reply that he timely delivered the motion to prison authorities for mailing within the limitations period. Because the limitations issue is not jurisdictional, however, the court need not address it and proceeds to the merits of the § 2255 motion. *See, e.g.*, *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998).

III

Martinez contends that his Fifth Amendment rights were violated "by actions and omissions of Government in connection with plea (and affecting sentencing)[.]" D. Mot. (ECF No. 2) at 7. He asserts that his "guilty plea was to Count 10 of the indictment, a specific incident & not 'conspiracy.'" *Id.* And Martinez maintains that the government "promised by the plea agreement, and intimated similarly, no additional charges based on the conduct . . . [b]ut the Government withheld information (from [codefendant Ismael] Avila [("Avila")]) . . . , and obtained the conviction by suppressing due process; then controlled Movant's sentencing exposure through the 'neutral' USPO, circumventing the contract's understood value." *Id.* The government posits that this claim is procedurally defaulted because Martinez did not raise it on direct appeal, and he has not shown cause and actual prejudice for the default; that the claim is waived by the plea agreement; and that the claim is without merit.

Here, Martinez argues that he understood the plea agreement "to mean [that the government] could not 'charge' him, in layman's terms, with any other conduct; he also understood that certain pathways through the USSG briar patch were foreclosed," that "the quantity of drugs relevant to Martinez was immutable," and that the factual resume's language "gave Martinez every reason to believe that the document, while not containing 'every little detail,' did address every relevant or material fact[.]" D. Reply (ECF No. 19) at 4, 7 (emphasis in original). Martinez's allegations are unsupported by, and contrary to, the record.

The record shows that the plea agreement and the factual resume do not contain any promises or understandings by the government or Martinez regarding relevant conduct, the quantity of drugs for which he would be held accountable for sentencing purposes, or how the sentencing guidelines would be applied to calculate his applicable guideline range. Rather, Martinez acknowledged in the plea agreement that he understood and agreed that the sentence imposed was solely in the discretion of the court after consideration of the advisory sentencing guidelines; no one could predict with certainty the outcome of the court's consideration of the guidelines in his case; the plea agreement was a complete statement of the parties' agreement; and no guarantees or promises from anyone had been made as to what sentence the court would impose. He also agreed that the factual resume was not intended to be a complete accounting of all the facts and events related to the charged offense. Martinez further swore in open court that he was not pleading guilty based on any promises other than those set forth in the plea documents and that no promise had been made to him to get him to plead guilty other than what was in those documents.

Martinez's alleged understanding of the plea documents was not reasonable given the plain language of the plea documents regarding the sentencing guidelines and his acknowledgments under oath before the court. And his allegations fail to show that the government's alleged conduct or omissions violated the plea agreement. *See United States v. Lewis*, 476 F.3d 369, 387-88 (5th Cir. 2007) (applying general principles of contract law and considering "'whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement'" to determine whether a plea agreement has been

violated) (quoting *United States v. Valencia*, 985 F.2d 758, 761 (5th Cir. 1993)). The claim is denied.[2]

IV

Martinez contends that his trial counsel rendered ineffective assistance "in connection with rearraignment and sentencing proceedings[,]" and that his appellate counsel rendered ineffective assistance "in connection with direct appellate proceedings[.]" D. Mot. (ECF No. 2) at 7.

A

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be

[2]Because the court denies the claim on the merits, it need not resolve the parties' arguments concerning procedural default and waiver.

determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (stating that prejudice inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would reasonably likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

On appeal, counsel need not raise every non-frivolous issue to render constitutionally effective assistance. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness,'" and the court must consider whether the challenge "would have been sufficiently meritorious such that [] counsel should have raised it on appeal." *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688); *see also Williamson*, 183 F.3d at 463 ("Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention."). To demonstrate prejudice, a movant must show a reasonable probability that but for counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

B

Martinez contends that his trial counsel rendered ineffective assistance during pretrial proceedings in advising him about his sentence exposure under the sentencing guidelines, which rendered his guilty plea not knowingly, voluntarily, and intelligently made. He asserts that

> counsel assured him that the [plea agreement] bound the U.S. Attorney's Office in this District to dismiss all other charges related to the underlying conspiracy against Movant and that, by pleading guilty to the single count of substantive possession on the specific date identified in the indictment (which was not a conspiracy count), Movant was avoiding risk of attachment, at sentencing, of "relevant conduct" otherwise attributable to the broader activities described in Counts 1 and 2 of the indictment.

D. Mem. (ECF No. 3) at 2. Martinez asserts that, according to his counsel, he was exposed "to a projected sentencing range of 24-30 months." *Id.* Based on his counsel's advice, Martinez states that he agreed to plead guilty to the possession charge. According to him,

> If I had been told, at that time, that the Government could or would add some huge amount of drugs to my tally based on what someone facing arrest themselves said, such that my sentencing range would be "maxed out" to very nearly 20 years—which I consider a life sentence, at my age—I would absolutely not have signed and agreed to plead guilty.

D. App. (ECF No. 20) at 2. Even if the court assumes, without deciding, that Martinez's counsel advised him about his sentence exposure under the sentencing guidelines, as alleged, the record shows that his representation of Martinez was not constitutionally ineffective.[3]

[3]Martinez concedes that he "really did tender his plea to a zero-to-twenty charge," and he does not allege or show that his counsel inaccurately represented the statutory maximum of the offense of conviction. D. Reply (ECF No. 19) at 2.

As explained, Martinez acknowledged in the plea agreement that he understood and agreed that he was subject to a sentence of up to 20 years' imprisonment on the possession count; that the sentence imposed was solely in the court's discretion after consideration of the advisory sentencing guidelines; that no one could predict with certainty the outcome of the court's consideration of the guidelines in his case; that he would not be allowed to withdraw his plea if his sentence was higher than he expected; that no guarantees or promises from anyone had been made to him about what sentence the court would impose; and that the plea agreement was a complete statement of the parties' agreement. Under oath at his rearraignment, he affirmed his understanding that his counsel was expressing a professional opinion—not a guarantee or promise—when he told Martinez what he thought the advisory guideline range would be in his case, and that neither the court nor his attorney could determine the advisory guideline range until after a PSR was completed. He denied that he was pleading guilty based on any promise by anyone aside from what was set forth in the plea documents.

Martinez quotes contemporaneous evidence in the record indicating that he would have rejected the plea agreement and, arguably, would have insisted on proceeding to trial had counsel advised him about the guideline imprisonment range ultimately calculated in the PSR.[4] He nonetheless fails to demonstrate that he had an objectively "reasonable chance of

[4]Martinez also makes self-serving, *post hoc* allegations of *Strickland* prejudice, which, without more, are insufficient to satisfy the second prong of *Strickland*. *See, e.g.*, *Lee v. United States*, 582 U.S. 357, 369 (2017); *United States v. Guzman*, No. 19-10783, 2021 WL 4610124, at *3 (5th Cir. Oct. 6, 2021) (per curiam).

obtaining a more favorable result" if he had rejected the plea agreement and gone to trial. *United States v. Batamula*, 823 F.3d 237, 240 (5th Cir. 2016) (en banc). Aside from speculation, confidence, and his own general denials about his involvement in the underlying conspiracy and the relevant conduct for which he was held accountable, Martinez provides no facts or evidence to show a reasonable chance of a more favorable result at trial.[5] Given the record before the court, it concludes that Martinez has not satisfied his burden under *Strickland*. *See United States v. Lincks*, 82 F.4th 325, 330-32 (5th Cir. 2023) (finding no ineffective assistance of counsel on movant's claim that his counsel "erroneously underestimate[ed] his guideline range, making his guilty plea unknowing or involuntary."). The court therefore denies Martinez's claim.

To the extent Martinez's allegations can be liberally construed to raise a claim challenging the voluntariness of his plea independent of his ineffective assistance of counsel claim, the claim fails for the reasons explained and is therefore denied.

C

Martinez also contends that his trial counsel was ineffective during sentencing proceedings in connection with challenging the 10 kilograms of methamphetamine attributed to him for purposes of determining his guideline imprisonment range. He asserts that his

[5]He also appears to ignore the additional 40 years of sentence exposure he would have faced had he proceeded to trial and been convicted under the indictment, any additional drug quantities which may have been attributed to him, coconspirators who would have been motivated to testify against him to reduce their own sentences or potential prosecution, and the evidence referenced by the PSR and the government at sentencing regarding his role in criminal activity.

counsel's advocacy affected his "right to effectively challenge the Government's position in connection with the PSR by either submitting contrary evidence and/or demanding that the Government's position be tested through the usual means of cross-examination, etc." D. Mem. (ECF No. 3) at 8.

Martinez maintains that his counsel should have presented testimony and evidence from Martinez; Edgar Martinez ("E. Martinez") (Martinez's son); Avila (a codefendant in the criminal case); a DEA case agent with whom E. Martinez had spoken in 2018; and Felipe Zamora-Guardiola ("Zamora") (an unindicted third party).[6] With the exception of himself, Martinez provides no facts or evidence beyond speculation and conclusory assertions to demonstrate that the others were available to testify at the sentencing hearing and would have done so, the content of their anticipated testimony, and how the testimony would have favored the defense.[7] He therefore fails to satisfy his burden under *Strickland* to establish ineffective assistance of counsel for failing to provide testimony and evidence from these individuals.[8] *See Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009).

---

[6]Martinez does not appear to be able to identify the alleged case agent, and refers to him as "Mateo," "Mata," and "Joe Mata (or similar)" in his filings. D. Mem. (ECF No. 3) at 11, 17; D. App. (ECF No. 20) at 4.

[7]E. Martinez was a fugitive in Mexico in the underlying criminal case and/or was in the custody of law enforcement in Mexico, and Martinez's evidence in this habeas case indicates that E. Martinez was not willing to turn himself in unless his conditions were met. *See* D. App. (ECF No. 20) at 17. Zamora was in custody in Oklahoma on state charges relating to the 10 kilograms of methamphetamine at issue in Martinez's case and had not been indicted in the federal case in this court. Avila was in custody and was one of Martinez's coconspirators who made statements about Martinez's role in, and involvement with, the 10 kilograms of methamphetamine and the underlying conspiracy.

[8]Martinez provides an unauthenticated recording in Spanish purporting to be a phone call from mid-2022 between Zamora and Martinez's ex-wife. In the recording, Zamora

Martinez posits that he "would have presented my own testimony (asserting that I had only been involved with the single event and had never directed anyone to do anything)[.]" D. App. (ECF No. 20) at 3. The record shows that, although not under oath, Martinez stated to the court at sentencing that "yes, I made that mistake, . . . I did those things, yes, but I am not the one who sent that guy over, and I am not the one who gave him the money either, and I am not his boss or anybody else's boss." Tr. (ECF No. 227) at 16. Read in context, Martinez is understood to be referring to the 2 kilograms of heroin as the "mistake" he made, and to be denying the circumstances resulting in the 10 kilograms of methamphetamine for which he was held accountable. The court accordingly heard at sentencing what Martinez claims he would have testified to had he been called. Given this, he has not shown a reasonable probability that the outcome of the proceedings would have been different, i.e., that his sentence would have been less severe, had counsel called him to testify at sentencing and had he testified, as alleged. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice."). He therefore has not satisfied the second *Strickland* prong and his claim fails on this basis.

allegedly states that Martinez never ordered or directed him to do anything and was not his boss in any way, and that it was E. Martinez who ordered Zamora to pick up the 10 kilograms of methamphetamine at issue. *See* D. App. (ECF No. 20) at 7. Even if the unauthenticated recording is what Martinez alleges it to be, it does not establish that Zamora was available and would have testified at the sentencing hearing three years earlier—particularly when he had not been charged with a federal offense in the underlying criminal case and when E. Martinez, the alleged leader of the underlying conspiracy, may still have been alive—or that he would have testified consistently with his alleged statements to Martinez's ex-wife.

Because he has not satisfied his burden under *Strickland*, this claim is denied.

D

In his memorandum, Martinez also makes additional allegations complaining about his counsel's representation at sentencing, including that counsel: (1) did not request a sentence below the sentencing guidelines range; (2) did not support "in any way (even seemed to anticipate the contrary) Movant's retention of acceptance-of-responsibility points"; (3) failed to advise him of the purpose of his allocution; (4) advised him to pursue an appeal and filed a notice of appeal despite the appeal waiver in the plea agreement; (5) "should have sat down with him to sift through his ideas about the case, to analyze and address what could be done about each in consideration of his rights . . . or why (in any given case) any of them, once so distilled and considered in context (e.g., the Court's power to compel testimony) might be 'shot down' or otherwise deserving of abandonment"; (6) "implicitly snubbed Movant's claims before the Court, by ignoring them, implying that they were meritless, suggesting that Movant had likely lost acceptance-of-responsibility points, and isolating Movant by walling off his claims inside a rambling and translated allocution"; (7) did not attempt to withdraw the guilty plea after the PSR was issued; (8) did not present a defense or evidence showing that the 10 kilograms of methamphetamine attributed to Martinez "had already been attributed to both Avila (in the instant criminal action, wherein he had been charged with conspiracy as well as possession with intent to distribute) <u>and</u> [Zamora] (in [Oklahoma] state court . . . )"; and (9) did not challenge "the fact that the Government had not presented evidence of any nexus with 'jointly undertaken criminal activity,' such as when

or by what means Movant could have instructed Avila" in connection with the 10 kilograms of methamphetamine. D. Mem. (ECF No. 3) at 8-18 (emphasis in original).

Martinez has failed to show prejudice under the second prong of the *Strickland* test as to each of these allegations. He provides no facts or evidence to show a reasonable probability that, but for counsel's alleged deficiencies, his sentence would have been less severe. *See, e.g.*, *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (holding that prejudice under *Strickland* requires a "'substantial,' not just 'conceivable,' likelihood of a different result.") (citing *Harrington v. Richter,* 562 U.S. 86, 112 (2011)). To the extent he asserts conclusory and unsubstantiated allegations of prejudice, they are insufficient to satisfy his burden under *Strickland*. *See, e.g.*, *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."). Because his allegations do not demonstrate *Strickland* prejudice, the court need not address the performance prong, and the claims are denied. *See Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

E

Martinez contends that his appellate counsel "failed to fully describe all available facts . . . in support of the appellate claim that Movant's plea was not [knowing, voluntary, and intelligent], e.g., both his pro se letter and his pro se allocution." D. Mot. (ECF No. 2) at 7. He complains that his "[a]ppellate counsel did not make the arguments . . . that Martinez's plea was involuntary because of the Guidelines-range increase and associated hoodwink discussed at sentencing[.]" D. Reply (ECF No. 19) at 10. He posits that, in addition to the

claim actually raised on direct appeal, his appellate counsel "should have argued . . . that the plea was infirm due to the cumulative effect of the late revelation of material information, as laid out in the record (including the pro se renouncement)." *Id.*

As the court has explained, the record shows that Martinez understood his maximum sentence exposure, the role of the advisory sentencing guidelines, and that his counsel's professional opinion concerning what he thought the advisory guideline range might be was not a guarantee or promise when he pleaded guilty under the plea agreement. He therefore fails to show that his guilty plea was unknowing and involuntary. As for his contemporaneous *pro se* correspondence, he has not shown by any facts or evidence that he would have been permitted to withdraw his guilty plea; indeed, he expressly acknowledged in his plea documents and at his rearraignment that he understood he would not be permitted to withdraw his guilty plea if his sentence was higher than he expected. Nor has he shown a reasonable chance of a more favorable outcome had he proceeded to trial.

Accordingly, because appellate counsel was not deficient for failing to raise meritless claims on appeal and Martinez has failed to identify or show any "[s]olid, meritorious arguments based on directly controlling precedent" that appellate counsel should have raised, he has not satisfied his burden under the first *Strickland* prong. *Williamson*, 183 F.3d at 463; *see also Phillips*, 210 F.3d at 348 (holding that attorneys do not render deficient representation by failing to present meritless claims on appeal). Further, he has not shown a reasonable probability that he would have prevailed on appeal but for appellate counsel's

failure to raise the arguments alleged, and therefore he also has not satisfied the second *Strickland* prong. He is not entitled to relief on this claim, and it is denied.

V

An evidentiary hearing under § 2255 is not required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A movant "is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (citation omitted). Further, a movant cannot use "an evidentiary hearing [as] a 'fishing expedition' for him to find support to validate his allegations." *United States v. Franks*, 397 Fed. App. 95, 101 (5th Cir. 2010) (per curiam) (citing *United States v. Edwards*, 442 F.3d 258, 268 n.10 (5th Cir. 2006)). Martinez has failed to present independent indicia in support of the likely merit of his claims, and the court is left to conclude that he is seeking to use an evidentiary hearing as a fishing expedition to validate his allegations. He has therefore failed to demonstrate that he is entitled to an evidentiary hearing.

VI

For the reasons explained, the court denies Martinez's motion under 28 U.S.C. § 2255 and dismisses this action with prejudice.

VII

Considering the record in this case and pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United

States District Court, and 28 U.S.C. § 2253(c), the court denies a certificate of appealability. The court finds that Martinez has failed to show (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If Martinez files a notice of appeal, he must pay the $605.00 appellate filing fee or submit a motion to proceed *in forma pauperis*.

**SO ORDERED**.

May 9, 2024.

SIDNEY A. FITZWATER
SENIOR JUDGE